IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | 12-CR-266 (WHP) |
| v. | : | |
| JUAN PABLO MAMALEJO-TRONCOSO, | : | |
| Defendant. | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT
JUAN PABLO MAMALEJO-TRONCOSO'S
SENTENCING GUIDELINES CALCULATIONS**

ALICE L. FONTIER, ESQ.
369 Lexington Ave., 2d Fl. #224
New York, NY 10017
(212) 256-1244

*Attorney for
Juan Pablo Mamalejo-Troncoso*

## Introduction

This Memorandum is submitted on behalf of Defendant Juan Pablo Mamalejo-Troncoso in connection with his sentencing, and is to further address the questions of the Court as to the applicable Guidelines and adjustments that apply to Mr. Mamalejo-Troncoso.

For the reasons set forth **post**, the Court should impose the following Guidelines calculations:

**Count 1 - Conspiracy to Commit Hobbs Act Robbery**

| | | |
|---|---|---|
| Base Offense Level: | 20 | (U.S.S.G. § 2B3.1(a))[1] |
| Increase for firearm: | 0 | (U.S.S.G. § 2B3.1(b)(2)(C)) |
| Increase for controlled substance | +1 | (U.S.S.G. § 2B3.1(b)(6)) |
| Loss | 0 | (Mr. Mamalejo-Troncoso adopts the reasoning of the PSR as set forth at ¶32) |
| Role in the offense: | -4 | (U.S.S.G. § 3B1.2(a), *and Cambrelen*, 29 F.Supp.2d at 128) |

**Adjusted Offense Level for Count 1:   17**

**Count 2 - Conspiracy to Possess and Distribute a Controlled Substance**

| | | |
|---|---|---|
| Base Offense Level: | 32 | (U.S.S.G. § 2D1.1(a)(5)) |
| Weapon | 0 | (U.S.S.G. § 2B3.1(b)(2)(C)) |
| Value | 0 | (U.S.S.G. § 2B3.1(b)) |
| Role in the offense: | -4 | (U.S.S.G. § 3B1.2(a), *and Cambrelen*, 29 |

---

[1] U.S.S.G. § 2B3.1 is incorporated through U.S.S.G. § 2X1.1 as this is a conspiracy and not a substantive offense.

        F.Supp.2d at 128)

**Adjusted Offense Level for Count 2:**    28

Multiple Count Adjustment    +1    *See* PSR at ¶¶ 44-48

Acceptance of Responsibility    -3    (U.S.S.G. § 3E1.1(a))

_____

**Total Offense Level**    26

Criminal History Category    I

Recommended range:    63-78 months (the mandatory minimum is 120 months)

**Argument**

I. **Conspiracy to Commit Hobbs Act Robbery**

    A.    **Base Offense Level**

Pursuant to U.S.S.G. § 2B3.1(a) the base offense level is 20.

    B.    **Possession of a Firearm**

    The evidence, as set forth in discovery, is that two vehicles – a Range Rover and a Camry – were stopped outside of a warehouse pursuant to a sting operation. The evidence showed that Mr. Mamalejo-Troncoso was a passenger in the Range Rover until a few minutes prior to his arrest. Mr. Gonzalez and Mr. Correa were continuously in the Camry. A few minutes before their arrest, Mr. Mamalejo-Troncoso entered the Camry. Both vehicles were stopped outside of the planned location of the robbery. All of the occupants of both vehicles were searched and arrested. Both the Range Rover and the Camry were searched at the scene of the planned robbery. A firearm was not seen by any of the officers at that time, nor was any firearm recovered at the time of arrest. In a subsequent, more thorough search of both vehicles, a firearm

was discovered, concealed within a compartment in the Camry.

Pursuant to U.S.S.G. § 2B3.1(b)(2)(C), if a firearm is possessed the offense level is increased by five points.  The government and the Office of Probation assign a five point increase because "witness testimony and DNA evidence" support that Mr. Mamalejo-Troncoso knew of the firearm and had handled the magazine.  Mr. Mamalejo-Troncoso opposes this increase.

The Second Circuit has stated, "[a]t sentencing, the defendant is responsible if an act performed in furtherance of a conspiracy by a co-conspirator was 'reasonably foreseeable,' regardless of whether the defendant acted to promote it or facilitate it. U.S.S.G. § 1B1.3(a)(1)(B); *see also id.* § 1B1.3, Application Note 1 ("The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability.")." *United States v. Medina*, 74 F.3d 413, 417 (2d Cir. 1996).  Thus, if the Court finds that it was reasonably foreseeable to Mr. Mamalejo-Troncoso, that a firearm would be possessed by one of his co-defendants then it can still apply the five point enhancement.

In order to enhance a particular defendant's sentence, the Second Circuit has explained that:

> the intended action must be part of the conspiratorial plan for the enhancement to be imposed. However, a defendant's intent that part of the plan be changed (a desire not to use firearms) or a defendant's lack of intent with respect to an aspect of the plan (ambivalence regarding the type of force used) does not alter the intended features of the conspiratorial plan itself. Accordingly, a defendant is liable for those specifically intended features, regardless of his personal intent (or lack thereof). Membership in the conspiracy is sufficient to support the application of an enhancement based on the intended features of the conspiratorial plan.

*United States v. Capanelli*, 479 F.3d 163, 167 (2d Cir. 2007)

The government has claimed that the firearm enhancement does *not* apply to Mr. Gonzalez, Mr. Correa, Mr. Brito, or Mr. Coiscou Diaz. Thus, it is the government's position that possession of the firearm was not "a part of the conspiratorial plan," otherwise the sentence for each of the defendants would be enhanced by five points. Accordingly the government must demonstrate that Mr. Mamalejo-Troncoso personally knew of the existence of the firearm.

The government asserts that despite Mr. Gonzalez and Mr. Correa continuously being in the car in which the firearm was later discovered, that the existence of the firearm was not known to them. In addition, despite the evidence that Mr. Gonzalez was solely responsible for communicating with the cooperating informant and planning this offense, the government contends that the existence of the firearm was not foreseeable to him. Yet, the government argues that the existence of the firearm was known to Mr. Mamalejo-Troncoso, a person who entered the Camry mere moments before his arrest, and did not plan the offense.

Mr. Mamalejo-Troncoso is not privy to any of the cooperating witnesses's statements and therefore cannot provide any factual arguments in opposition. However, the DNA evidence does not support the claim that Mr. Mamalejo-Troncoso handled the magazine of the firearm. The DNA analysis concluded that there were "three or more individuals" that contributed to the DNA on the magazine, and that Mr. Mamalejo-Troncoso was "potentially the major contributor."

The Office of the Chief Medical Examiner divides its conclusions for DNA Typing into categories. The first is stated as "is the source of" which means that the DNA profile of an individual matches the tested sample, this occurs in 1 in 6.80 trillion people. The DNA at issue here was labeled as "could be a major contributor." This category means that the tested DNA

was consistent with that of a given individual when comparisons could be made, but does not match and is not conclusive as to the identity of the person.  No DNA expert would state that this is a "match" or in this case that Mr. Mamalejo-Troncoso was necessarily one of the people that handled the magazine.  Thus the evidence does not support the allegation that Mr. Mamalejo-Troncoso handled the firearm or knew of its existence.

Accordingly, there is no evidence to support a five point enhancement for possession of a weapon, and the base offense level should not be adjusted on this basis.

C.     Value - Loss Amount

Pursuant to U.S.S.G. § 2B3.1(b), if the loss amount exceeds $10,000 the offense level should be increased.  The government contends that the loss amount exceeded $800,000 and therefore a 4 point enhancement applies. U.S.S.G. § 2B3.1(b)(E).  The government bases this assertion on its claim that 40 kilograms of cocaine are at issue, and that each kilogram of cocaine is worth "at least" $20,000.   Mr. Mamalejo-Troncoso objects to each of these claims.

As an initial matter, Mr. Mamalejo-Troncoso agrees with the Office of Probation's assessment that no enhancement should apply because no robbery occurred and no amount of property or anything of value was actually taken.  As previously stated in his Sentencing Memorandum, Mr. Mamalejo-Troncoso adopts paragraph 32 of the PSR in its entirety.  Pursuant to U.S.S.G. § 2B3.1, application note 3, "'loss' means the value of the property taken, damaged, or destroyed."  Here, no property was taken and there is no loss amount.  U.S.S.G. § 2B3.1, specifically does not include an increase for "intended" loss as the government contends.[2]

---

[2] *But see*, *United States v. Amato,* 46 F.3d 1255, 1261 (2d Cir. 1995) (holding that 2X1.1 was applicable to a Conspiracy to Commit Hobbs Act Robbery, and therefore the Court could consider the intended loss).

5

The PSR correctly points out that the Hobbs Act Robbery Guideline was amended in 2001 to remove the "intended loss" component. However, even prior to that amendment, when the case involved a sting operation – as is at issue here – and no loss was possible, because the crime could never have occurred, the loss amount is always zero. *United States v. Galbraith*, 20 F.3d 1054, 1059 (10th Cir. 1994), ("Under applicable authority, the loss defendant subjectively intended to cause is not controlling if he was incapable of inflicting that loss. Because this was an undercover sting operation which was structured to sell stock to a pension fund that did not exist, defendant could not have occasioned any loss even if the scheme had been completed. We conclude the intended or probable loss was zero."), *recognized by United States v. Falcioni*, 45 F.3d 24, 27 (2d Cir. 1995) ("This was not a reverse sting operation like the one that prompted the court in *Galbraith* to recognize a limited exception to use of the intended loss figure.").

Mr. Mamalejo-Troncoso also adopts the Office of Probation's statement that the value of the alleged drugs is too speculative to accurately calculate the intended loss amount. "The government bears the burden of proving the amount of loss that triggers a particular offense level increase under U.S.S.G. § 2B3.1(b)(7)." *United States v. Capanelli*, 270 F. Supp. 2d 467, 471 (S.D.N.Y. 2003). Further, as the Second Circuit explained in *Capanelli*, "[i]n order to apply any particular level increase under § 2B3.1(b)(7), the government must point to credible evidence in the record establishing the possibility (at the very least) that the repository of the targeted funds (be it a lemonade stand or, as in *Vasquez,* an armored car, or a credit union) contained the amount that the conspirators 'intended' to steal within the meaning of the Guidelines." *Id* at 474. The government claims that the sentence should be based on 40 kilograms of cocaine, despite the fact that no cocaine was actually in the warehouse. Since there were no drugs available to steal, there

6

is no intended value, and no enhancement applies. *Capanelli*, 270 F. Supp. 2d at 471.

In addition, here, without any source, the government asserts that a kilogram of cocaine is worth "at least" $20,000. The government has not met its burden of demonstrating the value of the loss at issue here. Indeed, a Google search for "value of a kilogram of cocaine" produces values ranging from $12,000 to $37,000 per kilogram of cocaine. Mr. Mamalejo-Troncoso does not consent to the use of a value seemingly picked at random by the government.

Accordingly, the Court should not impose an enhancement for value. Alternatively, if the Court intends to impose this enhancement, a *Fatico* hearing is requested to determine the loss amount.[3]

### D.   Role in the Offense

This offense – a planned robbery of a drug deal – was planned and coordinated by Mr. Mamalejo-Troncoso's co-defendants. He was not recorded on any telephone calls with the cooperating informant, nor was he present at any of the in-person meetings when this offense was planned and coordinated.

This offense was planned and coordinated by Mr. Gonzalez. Needing back-up, Mr. Gonzalez enlisted the assistance of Mr. Mamalejo-Troncoso, and several other individuals. Mr. Mamalejo-Troncoso rode in the second car, and followed Mr. Gonzalez to the warehouse where the alleged drug deal and planned robbery were to take place. Prior to his arrival at that location, Mr. Mamalejo-Troncoso was aware that he would be assisting in a robbery, but did not know the quantity or type of drug involved.

---

[3] If the government cites credible sources for its value calculation, or consents to a lower value, Mr. Mamalejo-Troncoso may withdraw his request for a *Fatico* hearing.

In these circumstances, as compared to his co-defendants who planned and lead this offense, Mr. Mamalejo-Troncoso played a minimal role. His part in this offense was limited to that of "back-up." In this context Mr. Mamalejo-Troncoso should receive a downward adjustment for his role in the offense. U.S.S.G. § 3B1.2(a), *and United States v. Cambrelen*, 29 F.Supp.2d 120, 127-128 (E.D.N.Y., 1998) (applying a minimal role adjustment to two defendants in a similar robbery of a drug deal in which the defendants were not the leaders or planners).

## II.     Conspiracy to Possess and Distribute a Controlled Substance

### A.     Base Offense Level

Pursuant to U.S.S.G. § 2D1.1, the base offense level is calculated pursuant to the weight of the controlled substance at issue. Mr. Mamalejo-Troncoso did not plan this offense, and was not informed of the quantity or type of drug that was supposed to be located in the warehouse. In addition, this case is based on a sting operation in which there were no actual drugs involved.

Under the Guidelines, in this type of case, the Court is tasked with determining the actual amount of drugs that were agreed upon. In addition, if the Court finds that the amount of drug was artificially high, the Court can depart downwards. *See United States v. Panduro*, 152 F. Supp. 2d 398, 403 (S.D.N.Y. 2001) *aff'd*, 38 F. App'x 36 (2d Cir. 2002)

Also, as set fort in U.S.S.G § 2D1.1, *application note* 26(A):

> If, in a reverse sting (an operation in which a government agent sells or negotiates to sell a controlled substance to a defendant), the court finds that the government agent set a price for the controlled substance that was substantially below the market value of the controlled substance, thereby leading to the defendant's purchase of a significantly greater quantity of the controlled substance than his available resources would have allowed him to purchase except for the artificially low price set by the government agent, a downward departure may be warranted.

U.S.S.G. § 2D1.1

Courts have held that in a "sting" case involving the planned robbery of a drug deal, as is at issue here, the same reasoning applies. *United States v. Cambrelen*, 29 F.Supp.2d 120, 125 (E.D.N.Y., 1998). The reasoning of *Cambrelen* is instructive here, as this case involves nearly identical facts. In *Cambrelen*, the informant and one of the defendants discussed the robbery of a potentially large drug deal, but did not come to a specific agreement as to the actual amount. The informant discussed quantities, but never stated with assurance the precise amount, and none of the other defendants were ever informed of the actual amount. Likewise, here, Mr. Gonzalez discussed committing a robbery of a "large" amount, and stated that it would be "more than ten kilograms." At the end, Mr. Gonzalez asked if the robbery would involve "forty" kilograms. There is no evidence that this number was ever discussed with Mr. Mamalejo-Troncoso, or that he had any reason to believe that forty kilograms would be involved.

The Court in *Cambrelen*, noted that:

> [s]ince the shift to a sentencing scheme that strictly ties sentencing to the quantities of drugs involved, many courts and commentators have expressed concern over the large discretion that law enforcement officials have in setting the amount of drugs "involved" in a case. *See, e.g., United States v. Lacey,* 86 F.3d 956, 966 (10th Cir.1996) (the "sentencing guidelines present opportunities for ... ratcheting up the punishment"); *United States v. Staufer,* 38 F.3d 1103, 1107 (9th Cir.1994) (an agent can "negotiate with somebody for an ounce, a pound, a kilo, 100 kilos, a million kilos of a substance and, of course, if the defendant bites at the bait, then that amount chosen by the drug agent will determine his drug sentence.") (quoting district court); *see also United States v. Calva,* 979 F.2d 119, 123 (8th Cir.1992); *Conference on the Federal Sentencing Guidelines: Summary of Proceedings,* 101 Yale L.J.2053 (1992).

> The influence that confidential informants have in setting the drug quantity is especially troubling since those people are often in the process of negotiating down their own drug sentences or charges with prosecutors, and have enormous incentive to inflate the drug quantities involved in the cases they help prosecute. *See United States v. Stavig,* 80 F.3d 1241, 1247 (8th Cir.1996). Unfortunately the government must often rely on informants to notify them of the amount that defendants are likely to accept. Reverse sting cases thus require "the most careful scrutiny and a probing examination by the district court." *Id.* at 1247.

*Cambrelen*, 29 F. Supp. 2d at 125-26.

Because the informant in *Cambrelen* artificially increased the amount of drugs, the Court held that a downward departure was appropriate. *Id* at 126. The same reasoning applies here. There were no actual drugs involved, and the last-minute mention of "forty" kilograms to Mr. Gonzalez over states the culpability of Mr. Mamalejo-Troncoso. The only evidence against Mr. Mamalejo-Troncoso indicates that he intended to participate in a robbery of a "large" quantity. Accordingly, the Court should consider an appropriate downward departure that more adequately reflects Mr. Mamalejo-Troncoso's actual involvement in the offense.

Alternatively, the Court should decline to impose the base offense level for forty kilograms of cocaine, as a matter of policy. In *Kimbrough*, the Supreme Court stated that:

> "[a] district judge must include the Guidelines range in the array of factors warranting consideration. The judge may determine, however, that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing."

*Kimbrough*, 552 U.S. at 91.

More recently, in *United States v. Spears*, 555 U.S. 261 (2009), the Court, clarifying its

decision in *Kimbrough*, confirmed that a sentencing court may choose *not* to apply a particular guideline solely because of a policy disagreement with that Guideline. *Id*., at 265-266 ("district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines"). Similarly, in *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010), the Second Circuit explained, "[f]ollowing *Kimbrough* , we held that "a district court may vary from the Guidelines range based solely on a policy disagreement with the Guidelines, even where that disagreement applies to a wide class of offenders or offenses." *Dorvee*, 616 F.3d at 184.

   Mr. Mamalejo-Troncoso respectfully requests that this Court find that the base offense level calculated using the forty kilogram amount that was "involved" in this offense is unduly harsh, for someone in his position – a defendant who was not aware of the alleged amount or type of drug. As a matter of policy, Mr. Mamalejo-Troncoso requests that this Court impose a non-Guidelines sentence of 120 months' incarceration.

   **B.**  **Possession of a Firearm**

   For the reasons set forth in the PSR at ¶38, and for the reasons set forth **ante**, Mr. Mamalejo-Troncoso did not knowingly possess a weapon, nor was it foreseeable that any of his co-defendants would possess a weapon. In addition, as noted in the PSR at ¶ 38, this enhancement has not been applied to any of Mr. Mamalejo-Troncoso's co-defendants. Accordingly, as a matter of fairness, and do avoid unwarranted sentencing disparities this enhancement should not apply. U.S.S.G. § 3553(a)(6).

   **C.**  **Use of Violence**

   For the reasons set forth in the PSR at ¶ 39, no enhancement for the use of violence

should be applied to Mr. Mamalejo-Troncoso. The evidence establishes that Mr. Mamalejo-Troncoso and his co-defendants intended to pose as police officers and "seize" drugs. Nothing about these facts indicates that Mr. Mamalejo-Troncoso threatened to use violence. Certainly no violence was actually used, as this was a sting operation and Mr. Mamalejo-Troncoso was arrested as he exited a car.

In addition, as the PSR notes, any "threat of violence" is accounted for by the conviction and sentence on the robbery count. There is no indication that Mr. Mamalejo-Troncoso intended to use violence during the planned possession and distribution of the narcotics.

Accordingly, this enhancement should not apply.

### D.     Role in the Offense

For the reasons set forth **ante**, Mr. Mamalejo-Troncoso requests a four level downward adjustment for minimal role.

## III.    Acceptance of Responsibility

The government asserts that all of the defendants *except* Mr. Mamalejo-Troncoso should receive a three point adjustment for acceptance of responsibility. The government claims that Mr. Mamalejo-Troncoso is situated differently because he plead guilty to the Indictment and not pursuant to the plea agreement.

Mr. Mamalejo-Troncoso was the *first* defendant to plead guilty. AUSA Randall Jackson stated that there was no plea agreement available, and therefore Mr. Mamalejo-Troncoso pled guilty before the Court, without a plea agreement. Mere days later, a different Assistant United States Attorney took over the case because Mr. Jackson was on trial in a different matter. That AUSA made plea offers to all of the other defendants. This changing of the guard and apparent

change in policy on the part of the government should not be held against Mr. Mamalejo-Troncoso.

As a matter of fundamental fairness and to avoid unwarranted sentencing disparities, Mr. Mamalejo-Troncoso should be awarded three points for acceptance of responsibility.

**Conclusion**

For all of the reasons set forth herein, and for the reasons set forth in the initial Sentencing Memorandum, Mr. Mamalejo-Troncoso respectfully requests that this Court sentence him to 120 months' incarceration. Mr. Mamalejo-Troncoso's properly Adjusted Offense Level is 26, he is in a Criminal History Category I, resulting in a recommended Guidelines range of 63-78 months. Accordingly, the mandatory minimum sentence of 120 months is sufficient but not greater than necessary to meet the needs of sentencing.

DATED:  June 27, 2013                                  Respectfully submitted,
        New York, New York

                                                       S// Alice L. Fontier
                                                       ALICE L. FONTIER, ESQ.
                                                       369 Lexington Ave., 2d Fl. #224
                                                       New York, NY 10017
                                                       (212) 256-1244